Brent O. Hatch (5715)
  hatch@hatchpc.com
Adam Pace (14278)
  pace@hatchpc.com
HATCH LAW GROUP
22 East 100 South, Suite 400
Salt Lake City, UT 84111
Tel: (801) 869-1919

Erik T. Koons (*pro hac vice pending*)
  erik.koons@bakerbotts.com
Thomas E. Carter (*pro hac vice pending*)
  tom.carter@bakerbotts.com
Frances Jennings (*pro hac vice pending*)
  fran.jennings@bakerbotts.com
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, D.C. 20001
Tel: (202) 639-7700
Fax: (202) 639-7890

*Attorneys for Defendant Mathews Archery, Inc.*

## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| JOSEPH SANTARLAS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HOYT ARCHERY, INC; ARCHERY TRADE ASSOCIATION, INC.; BOWTECH INC.; BPS DIRECT, LLC d/b/a BASS PRO SHOPS; CABELA'S LLC; DICK'S SPORTING GOODS, INC.; JAY'S SPORTS, INC. d/b/a JAY'S SPORTING GOODS; KINSEY'S OUTDOORS, INC.; LANCASTER ARCHERY SUPPLY, INC.; MATHEWS ARCHERY, INC.; NEUINTEL LLC d/b/a PRICESPIDER f/k/a ORIS INTELLIGENCE; PRECISION SHOOTING EQUIPMENT, INC.; TRACKSTREET, INC.,<br><br>Defendants. | **DEFENDANT MATHEWS ARCHERY, INC.'S MOTION TO DISMISS**<br><br>Case No. 2:25-cv-00436-DAK-DBP<br><br>District Judge Dale A. Kimball<br><br>Chief Magistrate Judge Dustin B. Pead |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................... 1

II.   ALLEGATIONS ...................................................................................................... 3

III.  LEGAL STANDARD ............................................................................................. 4

IV.   ARGUMENT ........................................................................................................... 6

      A.    The Complaint is Devoid of Any Facts Connecting Mathews to Any Allegedly Illegal Conduct ............................................................................. 6

      B.    Plaintiff's Allegations Do Not Plausibly Plead a Conspiracy Involving Mathews or Any Other Alleged Coconspirator ........................................... 8

            1.    The Complaint Fails to Allege Parallel Conduct by Defendants ............... 9

            2.    The Complaint Fails to Allege Any Additional Facts or "Plus Factors" Supporting an Inference of Conspiracy ........................................ 11

                  i.    MAPs are Unilateral, Procompetitive Tools that Manufacturers Use to Enhance Interbrand Competition ...................................... 11

                  ii.   The Extremely Broad Scope of the Alleged Conspiracy Cuts Against Plausibility ........................................................................ 12

                  iii.  Adoption of MAPs by Defendants is Fully Consistent with Lawful, Independent Decision-Making ......................................... 14

                  iv.   Participation in Trade Association Activities Does Not Support an Inference of Conspiracy ........................................................... 16

                  v.    Alleged Rising or Inflated Retail Prices Do Not Support an Inference of Conspiracy ............................................................... 17

      C.    Plaintiff's Own Allegations Defeat His Claim of Fraudulent Concealment ......... 18

V.    CONCLUSION ...................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Alaska Dep't of Revenue, Treasury Div. v. Manku*,
No. 20-1759-cv, 2021 WL 3027170 (2d Cir. July 19, 2021)...................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................................4, 13

*Ballen v. Prudential Bache Secs., Inc.*,
23 F.3d 335 (10th Cir. 1994) ......................................................................................................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................................ passim

*Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n*,
2016 WL 3199520 (N.D. Okla. June 8, 2016) ......................................................................6, 7

*Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n*,
691 F. App'x 515 (10th Cir. 2017) ....................................................................................5, 6, 10

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977)......................................................................................................................9

*Burtch v. Milberg Factors, Inc.*,
662 F.3d 212 (3d Cir. 2011)........................................................................................................10

*Campbell v. Austin Air Sys., Ltd.*,
423 F. Supp. 2d 61 (W.D.N.Y. 2005) .........................................................................................11

*Cayman Expl. Corp v. United Gas Pipe Line Co.*,
973 F.2d 1357 (10th Cir. 1989) .............................................................................................6, 15

*Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*,
555 F.3d 1188 (10th Cir. 2009) ....................................................................................................4

*City of Pontiac Police & Fire Ret. Sys v. BNP Paribas Sec. Corp.*,
92 F.4th 381 (2d Cir. 2024) ...........................................................................................................5

*Consol. Metal Prods., Inc. v. Am. Petrol. Inst.*,
846 F.2d 284 (5th Cir. 1988) ......................................................................................................16

ii

*Cont'l T.V., Inc. v. GTE Sylvania Inc.*,
    433 U.S. 36 (1977).................................................................................................11

*Contractor Tool Supply, Inc. v. JPW Indus., Inc.*,
    No. 5:24-cv-347-JA-PRL, 2024 WL 4980597 (M.D. Fl. Dec. 4, 2024)..................................15

*CVB, Inc. v. Corsicana Mattress Co.*,
    No. 1:20-CV-00144-DBB, 2024 WL 4505044 (D. Utah Oct. 16, 2024) .................................7

*FTC v. Tempur Sealy Int'l, Inc.*,
    768 F. Supp. 3d 787 (S.D. Tex. 2025) ...................................................................15

*Holabird Sports Discounters v. Tennis Tutor, Inc.*,
    993 F.2d 228, 1993 WL 147470 (4th Cir. May 7, 1993)....................................................11, 12

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
    245 F. Supp. 3d 1343 (N.D. Ga. 2017) ..................................................................16

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*,
    28 F.4th 42 (8th Cir. 2022) ...............................................................................16

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ...................................................................8

*In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) .....................................................................13, 14, 18

*In re Nat'l Ass'n of Music Merchs., Musical Instruments & Equip. Antitrust Litig.*,
    No. 09CV2002, 2012 WL 3637291 (S.D. Cal. Aug. 20, 2012)...........................................17

*In re Travel Agent Comm'n Antitrust Litig.*,
    583 F.3d 896 (6th Cir. 2009) ...............................................................................7

*In re Urethane Antitrust Litig.*,
    913 F. Supp. 2d 1145 (D. Kan. 2012) ...............................................................18, 19

*Kan. Penn Gaming, LLC v. Collins*,
    656 F.3d 1210 (10th Cir. 2011) ........................................................................5, 7

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ..........................................................................4, 8

*Law v. NCAA*,
    134 F.3d 1010 (10th Cir. 1998) ...........................................................................6

*Leegin Creative Leather Prods. v. PSKS, Inc.*,
    551 U.S. 877 (2007)......................................................................................................12, 15

*Llacua v. W. Range Ass'n*,
    930 F.3d 1161 (10th Cir. 2019) ..........................................................................5, 8, 16, 17

*Marker Volkl USA, Inc. v. Outdoor Outlet, LLC*,
    No. 10-C-0466, 2011 WL 2173797 (E.D. Wis. June 2, 2011) ................................15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..............................................................................................................5

*Mitchael v. Intracorp, Inc.*,
    179 F.3d 847 (10th Cir. 1999) ........................................................................................9

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
    883 F.3d 32 (2d Cir. 2018)......................................................................................8, 16

*Okla. Firefighters Pension & Ret. Sys. v. Deutsche Bank Aktiengesellschaft*,
    No. 23-cv-5095 (JGK), 2024 WL 4202680 (S.D.N.Y. Sept. 13, 2024) ...................14

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
    911 F.3d 505 (8th Cir. 2018) .........................................................................................10

*Robbins v. Oklahoma*,
    519 F.3d 1242 (10th Cir. 2008) ........................................................................4, 5, 6, 8

*TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*,
    964 F.2d 1022 (10th Cir. 1992) ......................................................................................5

*United States v. Colgate & Co.*,
    250 U.S. 300 (1919)..........................................................................................................12

*Williamson Oil Co., Inc. v. Philip Morris USA*,
    346 F.3d 1287 (11th Cir. 2003) ....................................................................................16

**STATUTES**

15 U.S.C. § 1....................................................................................................... passim

15 U.S.C. § 15b...................................................................................................................18

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) ............................................................... passim

Pursuant to Federal Rule of Civil Procedure 12(b)(6) Defendant Mathews Archery, Inc. ("Mathews") hereby moves the Court to dismiss Plaintiff's Complaint in its entirety and alternatively all claims asserted against Mathews.

## I. <u>INTRODUCTION</u>

Plaintiff alleges that nearly the entire archery industry—comprised of the Archery Trade Association ("ATA") and *all* 2,500-plus members—conspired for over 11 years to artificially raise retail prices on literally thousands of different "archery product" SKUs, including all sorts of bows, arrows, arrowheads, targets, scopes, quivers, and other accessories. But Plaintiff's allegations, supported only by cobbled-together snippets from websites and social media posts, fail to plausibly allege any factual basis for such an industry-wide cartel. Similarly, the Complaint contains no factual allegations to support the claim that Mathews engaged in any unlawful conduct.

The Complaint simply asserts in a conclusory fashion that Defendants and thousands of alleged coconspirators all "agreed" to implement and enforce minimum *advertised* pricing policies ("MAP" or "MAPs"), which had the effect of raising *retail* prices paid by consumers. Plaintiff's claim fails as a matter of law. *First*, the Complaint fails to allege any facts that if true would establish that there was an agreement between any Defendants, much less an "agree[ment] to work together to adopt and implement industry-wide MAPs on Archery Products sold in the United States with the objective of artificially . . . raising . . . prices." (Dkt. 1, Proposed Class Action Compl. ("Compl."), ¶ 76.). And while the Complaint alleges a vague agreement to "adopt MAP policies for the express purpose . . . of fixing . . . prices," there are no factual allegations that any Defendant agreed to implement MAPs with the same or similar price terms. Absent a factually based allegation of an agreement, there can be no Sherman Act Section 1 conspiracy claim. *Second,* MAP policies

1

are a perfectly legal, common, and procompetitive tool used across many industries. Without more—and there are no other detailed factual pleadings here to support a claim—MAP policies alone cannot form the basis of a conspiracy claim under the Sherman Act. *Third*, MAPs, by definition, attempt to regulate only the price at which retailers *advertise* a manufacturers' product, not the alleged "supra-competitive" "retail prices" Plaintiff purportedly paid. There is thus a fatal factual and legal disconnect between Defendants' alleged conduct and Plaintiff's alleged injury. As such, the Complaint should be dismissed for failure to allege facts required to establish the basic "who, what, when, where, or why" of any alleged unlawful agreement.

Plaintiff's allegations as to Mathews are even more threadbare. The Complaint mentions Mathews a grand total of *two times*—once in the recitation of the "parties," where Mathews is alleged to have "engaged in the agreement to fix, raise, maintain, or stabilize prices of Archery Products sold in the United States," and once in a chart listing Mathews, along with 38 other companies, as having held ATA board seats. (Compl. ¶¶ 37, 66.) That is it. There are no factual allegations to put meat on the bone, just conclusions. The Complaint does not allege facts establishing that Mathews ever even adopted a MAP policy; that Mathews ever enforced any MAP policy; that the pricing or other terms of any Mathews policy was similar to any other alleged coconspirator's policy; or that any such policy applied to any of the Archery Products at issue. And there are no factual allegations that Mathews "agreed" with—or even communicated with—any alleged coconspirator on anything, much less an industry-wide conspiracy to implement and enforce MAPs. In sum, Plaintiff seeks to draw Mathews into an incredibly disruptive and expensive nationwide antitrust class action, publicly labeling Mathews as a cartelist intent on harming its own customers, and seeks $3.6 billion in trebled damages from Mathews, based on literally no factual

allegations to support these untenable claims.  (Dkt. 1-1 at 1 (listing demand of $1.2 billion).)  The Complaint should be dismissed for failure to state a claim under Rule 12(b)(6).

## II.    <u>ALLEGATIONS</u>

Plaintiff alleges that *every* member of the ATA—a mass of over 2,500 "businesses that manufacture, buy, and sell Archery Products"—conspired over more than 11 years to form a "cartel" to adopt, implement, and enforce MAPs.  (Dkt. 1, Proposed Class Action Compl. ("Compl."), ¶¶ 1, 48 ("Co-conspirators include, but are not limited to, all other entities that were ATA members at any relevant times"), 61 ("By 2023, ATA membership had surpassed 2,500 organizations").)  The 13 defendants actually named are the ATA and a collection of "upstream manufacturer defendants," "downstream retailer defendants," and "downstream distributor defendants making up a tiny fraction (0.5%) of ATA membership, along with two software vendors (the "Defendants").  (*Id.* ¶¶ 35-47.)  All manufacturer, distributor, and retailer Defendants are alleged to have "sold Archery Products subject to a MAP."  (*Id.* ¶¶ 35-44.)  The "coordinated" implementation of MAPs across the archery industry allegedly raised retail prices in an all-encompassing "relevant market" of any and all "products used by consumers for bowhunting or archery" in the United States, including "submarkets[] or cluster markets" for bows, arrows, arrowheads, targets, and accessories.  (*Id..* ¶¶ 57, 146.)  The Complaint, however, does not specify any facts substantiating these sweeping allegations.  The Complaint alleges zero facts regarding the actual terms of any the 2,500-plus alleged coconspirators' MAP policies, let alone facts substantiating that MAPs contained similar advertised pricing terms, or indeed that any MAP policy was actually ever enforced.  (*Id.*)

Plaintiff attempts to substantiate his claims of conspiracy by pointing to public statements, industry publications, and participation by some (mostly unnamed) ATA members at trade association shows and other events, where he asserts that MAPs **may** have been discussed, as

evidence of an unlawful agreement. (*Id.* ¶¶ 76-134.) The vast majority of these statements are alleged to have come from the ATA itself, rather than from individual members. (*Id.*)

As for Mathews, its name appears only twice in the body of the Complaint: first, in a list of "Upstream Manufacturer Defendants" containing nothing but Mathews' corporate address and boilerplate allegations that Mathews "engaged in the agreement;" and second, on a chart of "ATA Board of Directors, by year" showing two Mathews employees allegedly holding seats on the ATA board between 2017 and 2024. (*Id.* ¶¶ 37, 66.) Plaintiff alleges no statements made by Mathews, no discussions involving Mathews representatives, no communications or agreements between Mathews and any other party, and nothing about whether or when Mathews may have adopted or enforced a MAP policy or how such a policy might compare to those of other archery product manufacturers. (*See generally* Compl.)

## III.  <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. 544 at 570). The Court's gate-keeping function under Rule 12(b)(6) is particularly crucial in the context of antitrust class action claims, due to the "high costs and frequent abuses associated with antitrust discovery." *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191 (10th Cir. 2009); *see Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) ("This is because discovery in antitrust cases frequently causes substantial expenditures

and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case.") (citing *Twombly*, 550 U.S. at 558-59).

"The Supreme Court has long warned courts to be hesitant about inferring concerted action from evidence that is merely circumstantial." *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1179 (10th Cir. 2019) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986)). An allegation of conspiracy "is not plausible if in light of common economic experience[,] the alleged conduct is equally likely to result from independent action." *Id.* at 1175 (citing *Twombly*, 550 U.S. at 556-57, 567-68). Indeed, allegations of "parallel conduct or interdependence, without more" fail to state a plausible conspiracy claim as such action is "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. 544 at 570).

Allegations of participation in an antitrust conspiracy must be plausible as to every Defendant *individually*, not merely as to a group or association. "When a [plaintiff] asserts complex claims against multiple defendants, it is particularly important to make clear **exactly who is alleged to have done what to whom**, to provide **each individual** with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations." *Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n*, 691 F. App'x 515, 519 (10th Cir. 2017) (cleaned up, emphasis added) (not selected for publication) (citing *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)); *City of Pontiac Police & Fire Ret. Sys v. BNP Paribas Sec. Corp.*, 92 F.4th 381, 397 (2d Cir. 2024) ("Post-*Twombly* authorities overwhelmingly hold that a complaint that provides no basis to infer the culpability of the *specific* defendants named in the complaint fails to state a claim.") (internal quotations omitted); *see also TV Commc'ns Network, Inc. v. Turner*

*Network Television, Inc.*, 964 F.2d 1022 (10th Cir. 1992); *Cayman Expl. Corp v. United Gas Pipe Line Co.*, 973 F.2d 1357, 1361 (10th Cir. 1989).  The Supreme Court has been "particularly critical of complaints that mentioned no specific time, place, or person involved in the alleged conspiracies." *Bristow*, 691 F. App'x at 519 (citing *Robbins*, 519 F.3d at 1248).

## IV.    ARGUMENT

To state a claim for a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, Plaintiff must allege sufficient facts that, if taken as true, show that Mathews (1) participated in an agreement that (2) unreasonably restrained trade.  *Law v. NCAA*, 134 F.3d 1010, 1016 (10th Cir. 1998).  Plaintiff has not pleaded sufficient facts to establish any agreement among any alleged coconspirators, let alone one that involved Mathews.

### A.    The Complaint is Devoid of Any Facts Connecting Mathews to Any Allegedly Illegal Conduct

The Court should dismiss Mathews from the case because the Complaint alleges *no facts* connecting Mathews to any unlawful conduct.  The sole factual allegation as to Mathews is participation by two Mathews employees in the ATA board.  This accusation *of legal behavior* is wholly insufficient to tie Mathews to a sweeping antitrust conspiracy.  *See Bristow*, 691 F. App'x 515 at 519 (specifics as to "who is alleged to have done what to whom" as to individual parties are required under Rule 12(b)(6)); *see also Twombly*, 550 U.S. at 558 (demanding "specificity in pleading").  Otherwise, mere membership on the board of a trade association would expose countless companies and individuals to ruinous damages under the Sherman Act for legal behavior. The district court's decision in *Bristow*, affirmed by the Tenth Circuit, provides a helpful example. In that case, the owner of a handful of medical centers sued eight defendants alleging a conspiracy to exclude plaintiff from the market.  *Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue*

*Shield Ass'n*, 2016 WL 3199520, at *1, 3 (N.D. Okla. June 8, 2016), *aff'd*, 691 F. App'x 515. One defendant—a national insurance association—was, like Mathews here, named only twice in the complaint with no specific allegations that it "played any role in the alleged anticompetitive conspiracy." *Id.* at *4. The court dismissed the single defendant on that basis alone. *Id.* at *4, 10.

Plaintiff cannot overcome the dearth of facts connecting Mathews to any unlawful conduct by lumping all "defendants" and "co-conspirators" together into a generic, unsupported, conclusory allegation of illegality. (*See, e.g.*, Compl. ¶ 76 ("Defendants agreed to work together to adopt and implement industry-wide MAPs"), ¶ 134 ("Defendants and co-conspirators continue to express and signal to one another their continued commitment to the price-fixing agreement.")). Such group pleading is routinely rejected by courts. As a recent decision from this district held:

> Conclusory, collective language is too convenient, too undisciplined, and too unfocused in light of exposures to litigation expense and disruption (even without ultimate liability) that are so great in antitrust cases. To proceed with an antitrust claim, a complaint must allege more than mere repetitive generic reference to "Defendants" tacked on to a conclusory verb form to connect an individual defendant to an actual agreement in an antitrust conspiracy.

*CVB, Inc. v. Corsicana Mattress Co.*, No. 1:20-CV-00144-DBB, 2024 WL 4505044, at *4 (D. Utah Oct. 16, 2024) (internal quotation marks and citations omitted); *see also In re Travel Agent Comm'n Antitrust Litig.,* 583 F.3d 896, 905 (6th Cir. 2009) (rejecting plaintiffs' "attempt to implicate" certain defendants who were not "mentioned in the body of the Amended Complaint," and with respect to whom plaintiffs failed to "specify how [they] are involved in the alleged conspiracy," by "relying on several vague allegations contained in the Amended Complaint that refer to 'defendants' or 'defendants' executives'"). In cases such as this one, alleging a conspiracy involving thousands of participants from every level of the supply chain, Plaintiff "must make clear exactly who is alleged to have done what" to state a plausible claim. *Kan. Penn Gaming*, 656 F.3d at 1215 (quoting

*Robbins*, 519 F. 3d at 1249-50).  Plaintiff has not, and cannot, meet this standard.

Nor does mere membership or board service in a trade association suffice to plead participation in an alleged conspiracy.  "[M]embership in an association does not render an association's members automatically liable for antitrust violations committed by the association. Even participation on the association's board of directors is not enough by itself."  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008).  Rather, "[e]vidence should tend to show that association members, ***in their individual capacities***, consciously committed themselves to a common scheme designed to achieve an unlawful objective."  *Llacua*, 930 F.3d at 1179 (emphasis added) (quoting *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 40 (2d Cir. 2018)).  Plaintiff has failed to allege any facts meeting that standard as to Mathews, and the Complaint should be dismissed.

### B.    Plaintiff's Allegations Do Not Plausibly Plead a Conspiracy Involving Mathews or Any Other Alleged Coconspirator

In addition to failing to plead facts connecting Mathews to anything unlawful, the Complaint fails to plausibly allege facts of a conspiracy.  In the absence of any non-conclusory allegations of direct evidence of conspiracy—a "smoking gun" which is clearly lacking here—the only route available to Plaintiff is to allege *facts* of (1) parallel conduct by Defendants along with (2) "plus factors" from which the existence of the conspiracy could be plausibly inferred.  *See Twombly*, 550 U.S. at 556-57; *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007) ("Attendance at industry trade shows and events is presumed legitimate" and does not constitute direct evidence of conspiracy).  As the Tenth Circuit explained:

> While consciously parallel behavior may contribute to a finding of antitrust conspiracy, it is insufficient, standing alone, to prove conspiracy.  Such parallel behavior may, however, support the existence of an illegal agreement when augmented by additional evidence from which an understanding among the parties

> may be inferred.  Such evidence may include a showing that the parties are acting against their own individual business interests, or that there is motivation to enter into an agreement requiring parallel behavior.  Mere exchanges of information, even regarding price, are not necessarily illegal, in the absence of additional evidence that an agreement to engage in unlawful conduct resulted from, or was part of, the information exchange.

*Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 859 (10th Cir. 1999) (affirming summary judgment where alleged "parallel conduct"—use of a common insurance claim review company—was not accompanied by facts supporting any further inference of conspiracy).  Plaintiff has failed to allege both (1) true parallel conduct by Defendants in the first instance, and (2) any non-conclusory facts, or "plus factors," supporting an inference of conspiracy from parallel conduct.  The Complaint thus fails to plausibly allege concerted action as required under Section 1 of the Sherman Act and should be dismissed.[1]

       1.     <u>The Complaint Fails to Allege Parallel Conduct by Defendants</u>

Plaintiff has failed to allege any facts establishing any parallel conduct by Defendants.  Aside from boilerplate allegations that each Defendant "sold Archery Products subject to a MAP" (*see* Compl. ¶¶ 35-44), the Complaint fails to specify anything that would substantiate parallel conduct.  Plaintiff's allegations are limited to the purported adoption of a MAP policy by one distributor in June of 2015 (*id*. ¶ 89), by one non-defendant manufacturer at some point in 2014 (*id*. ¶ 93), and the concession that, even *before* the alleged cartel, "manufacturer MAP policies existed within the

---

[1] Plaintiff must also plead "antitrust injury" under the Sherman Act, which is "injury of the type the antitrust laws were intended to prevent and that flows from what which makes defendants' acts unlawful."  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  Without a plausible allegation of conspiracy, Defendants' MAP policies are only a collection of lawful, independent, unilateral manufacturer advertising policies.  There thus can be no injury flowing "from that which makes defendants' acts unlawful," and no recovery.

Archery Products industry as early as the 2000s."[2]  (*Id.* ¶ 4.)  Plaintiff pleads no detail as to the content of any policies, the scope of products involved, the advertising to which the policies may apply,[3] whether any policy was ever actually enforced, or the degree of similarity (or dissimilarity) of the advertised pricing terms across policies.  The Complaint provides none of the required detail of "exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations." *Bristow*, 691 F. App'x at 519 (cleaned up).  Simply put, nothing can be reliably inferred from unsupported claims of vaguely similar and legal conduct occurring over more than a decade, let alone the existence of a conspiracy.  *See Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 516-17 (8th Cir. 2018) (affirming dismissal of Section 1 claim because allegation of actions taken six months apart "lack[ed] temporal proximity," did not constitute "parallel conduct, [so] no discussion of any 'plus factors' [wa]s necessary"); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 228-29 (3d Cir. 2011) (allegations of only somewhat similar behavior "at different time periods" "f[e]ll far short of demonstrating parallel behavior").  Without a plausible allegation of parallel conduct, Plaintiff's Complaint should be dismissed.

---

[2] The Complaint does not specify which manufacturers had those earlier policies or whether others were adopted in the decade between the 2000s and the start of the alleged conspiracy period in 2014. (Compl. ¶ 4; *see id.* ¶ 50 (defining alleged conspiracy period as January 1, 2014, to present).)

[3] As part of the relevant market allegations, Plaintiff asserts without any detail that "Defendants conspired to raise prices through the adoption, implementation, and enforcement of MAPs on the Archery Products market in the United States as a whole," and that this supports a single, all-encompassing market for analytical convenience. (Compl. ¶ 147.)  In other words, Plaintiff's failure to allege any specifics as to the scope of Defendants' MAP policies also renders its alleged market definition implausible.

2.    The Complaint Fails to Allege Any Additional Facts or "Plus Factors" Supporting an Inference of Conspiracy

The Complaint also fails to articulate any "plus factors" supporting an inference of conspiracy and thus fails to plausibly state a claim. Indeed, the Complaint pleads facts that demonstrate the *implausibility* of any conspiracy.

### i.    *MAPs are Unilateral, Procompetitive Tools that Manufacturers Use to Enhance Interbrand Competition*

MAPs are independent, unilateral manufacturer policies that require retailers of the manufacturer's products to *advertise* those products at or above a minimum price. Importantly, the policies are limited to maintaining an advertised price, not an actual retail price, and retailers remain free to set their own prices and/or discounts at the time of consumer purchase. *See, e.g.*, *Campbell v. Austin Air Sys., Ltd.*, 423 F. Supp. 2d 61, 68 n.6 (W.D.N.Y. 2005) (finding that "MAP policy" restricted "only the minimum price for which a dealer could advertise" and "explicitly states that a dealer may sell [the product] for any price," and thus did not constitute an "agreement to fix prices"). MAP policies also apply only to the issuing manufacturer's products, not the products of competing brands, making them a unilateral restraint on "intrabrand" rather than "interbrand" competition. *See Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 51-52 n.19 (1977) ("Interbrand competition is the competition among the manufacturers . . . and is the primary concern of antitrust law."). MAP policies are procompetitive because they can protect and enhance brand value and prevent some retailers from free riding on other retailers that invest in advertising and the customer experience, thereby encouraging such investments. *See Holabird Sports Discounters v. Tennis Tutor, Inc.*, 993 F.2d 228, 1993 WL 147470, at *1 n.1 (4th Cir. May 7, 1993).[4] MAP policies are in a manufacturer's

---

[4] In *Holabird Sports*, the Fourth Circuit detailed the process of potential free-riding in the context

unilateral economic self-interest, particularly in premium industries like archery where branding and brand differentiation is important to business success.  *See id.* at *1-2 (purpose of MAP policy was "to maintain a healthy distribution system;" affirming summary judgment on Section 1 claim for lack of evidence of any concerted action).  The Supreme Court recognized long ago in *Leegin* that manufacturer-imposed restrictions on *intrabrand* competition like MAP policies can often have a procompetitive effects on *interbrand* competition, including by promoting higher product quality, brand image, and improved service by dealers and retailers.  *See Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877 at 889-90, 895-96 (2007).  And unlike the vertical agreements at issue in *Leegin*, MAP policies are *unilaterally* imposed by a manufacturer "exercis[ing] its [] right to refuse to deal with retailers that do not follow its suggested [advertised] prices."  *Id.* at 902 (citing *United States v. Colgate & Co.*, 250 U.S. 300 (1919)).  In other words, MAP policies fall outside the reach of Section 1 of the Sherman Act because they rest on *unilateral* manufacturer policies on advertising, not *concerted* action between distributors or retailers on resale pricing.

> ii.    ***The Extremely Broad Scope of the Alleged Conspiracy Cuts Against Plausibility***

Plaintiff attempts to circumvent the lawful and unilateral nature of MAP policies by alleging, only in a conclusory and illogical fashion, a conspiracy to implement and enforce those policies

---

of an innovative tennis ball machine: "Free-riding occurs when a discounter takes advantage of customer services offered by local dealers.  Since the Tennis Tutor is a complex, innovative machine, most prospective purchasers would not fully appreciate the benefits of the product unless dealers make the effort to explain the machine, set up demonstrations, and allow trial use. Without the advertising restriction, . . . discounters that offer no such special services could exploit the efforts of full-service local dealers: Customers would go to their local dealer to gather information about the Tennis Tutor, but could then order the machine for a lower price from a discounter that could afford to charge less than the local dealer because it did not have to bear the expense of customer services."  993 F.2d 228, 1993 WL 147470, at *1 n.1.

across all manufacturers, distributors, retailers, and other ATA members. Its allegations are remarkably similar to those asserted in *In re Musical Instruments & Equipment Antitrust Litigation*, another failed class action complaint alleging coordinated adoption and enforcement of MAP policies through a trade association using a purported "hub and spoke" conspiracy. 798 F.3d at 1189. In *Musical Instruments*, the Ninth Circuit found that the plaintiffs' evidence could just as easily suggest rational business behavior by the manufacturers and did not necessarily result from a conspiracy. Because this evidence only showed a possibility of a conspiracy, rather than the "plausibility" necessary to survive a motion to dismiss, the Ninth Circuit affirmed the trial court's dismissal of the case under Rule 12. *Id.* at 1194; *see Iqbal*, 556 U.S. at 668 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.").

This case is even more clearly deficient given the sheer breadth and scope of Plaintiff's alleged conspiracy. While the Ninth Circuit recognized a hub-and-spoke conspiracy in the allegations it confronted, Plaintiff here posits a conspiracy that defies all metaphors: an "everything-everywhere-all at once" conspiracy that infects every corner of the archery industry nationwide. While naming 13 Defendants from each level of the archery industry supply chain (manufacturer, distributor, retailer, plus software providers), Plaintiff alleges that every member of the ATA—over 2,500 in total, making up "the majority of Archery Product manufacturers, distributors, and retailers" (Compl. ¶ 1)—has given their assent to a plot to enact, enforce, and comply with MAP policies covering every sale of every type of archery product for more than a decade. The logistics of enacting and policing such a vast conspiracy would be truly staggering, and cut sharply against any inference of plausibility. "[C]asting this extremely wide net" and "fail[ing] to link each of the

defendants individually to specific acts of anticompetitive conduct in furtherance of the conspiracy" renders "the claimed antitrust conspiracy . . . implausible as alleged." *Alaska Dep't of Revenue, Treasury Div. v. Manku*, No. 20-1759-cv, 2021 WL 3027170, at *4 (2d Cir. July 19, 2021) (affirming dismissal of alleged industry-wide conspiracy "involving more than twenty entities"); *see also Okla. Firefighters Pension & Ret. Sys. v. Deutsche Bank Aktiengesellschaft*, No. 23-cv-5095 (JGK), 2024 WL 4202680, at *8 (S.D.N.Y. Sept. 13, 2024) ("The plaintiff's factual allegations fail to render plausible such a wide-ranging conspiracy" of five banking groups over five years).

In choosing to lead with such sweeping and generalized conspiracy allegations, Plaintiff has exhibited the irretrievable lack of plausibility of his claims.

### iii. *Adoption of MAPs by Defendants is Fully Consistent with Lawful, Independent Decision-Making*

Next, Plaintiff makes passing reference to one of the "plus factors" rejected in *Musical Instruments* and sharply limited by other case law: that unilateral adoption of MAP policies would allegedly have been against individual defendants' self-interest absent a conspiracy (*see* Compl. ¶ 4 ("unilateral adherence to MAP policies was not in any one company's unilateral economic self-interest")). *Musical Instruments*, 798 F.3d at 1195. This theory applies only when allegations plausibly show "***extreme*** action against self-interest . . . for example, where individual action would be ***so perilous*** in the absence of advance agreement that ***no reasonable firm*** would make the challenged move without such an agreement." *Id.* (emphasis added). As the Tenth Circuit recognized:

> The antitrust plaintiff who relies on a theory of 'conscious parallelism' must establish that defendants engaged in consciously parallel action which was contrary to their economic self-interest so as not to amount to good faith business judgment. Thus, the conspiracy allegation will fail if there is an independent business justification which explains the alleged conspirators' conduct.

*Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 973 F.2d 1357, 1361 (10th Cir. 1989) (citations omitted).  This "plus factor" is inapplicable here because, as explained above, *see* Section IV.B.2.i., and recognized by the Supreme Court, *see Leegin*, 551 U.S. at 896-97, manufacturers have multiple procompetitive reasons—"independent business justifications," *see Cayman Exploration*, 973 F.2d at 1361—to institute MAP policies on a unilateral basis.  Distributors and retailers likewise have a strong independent motive to comply with manufacturer MAP policies, or else risk losing access to products that consumers demand.  *See, e.g.*, *Marker Volkl USA, Inc. v. Outdoor Outlet, LLC*, No. 10-C-0466, 2011 WL 2173797, at *2-3 (E.D. Wis. June 2, 2011) (retailer warned, suspended, and ultimately terminated by ski product manufacturer for repeated violations of unilateral MAP policy).

MAP policies are legal and ubiquitous across many industries.  *See, e.g.*, *FTC v. Tempur Sealy Int'l, Inc.*, 768 F. Supp. 3d 787, 803 (S.D. Tex. 2025) (noting that MAPs are typically used by "mattress suppliers"); *Marker Volkl*, 2011 WL 2173797, at *2 (describing MAP policy for ski products to protect "Volkl's quality distribution system and superior product image" and discourage "'free riding' on the service and investment of other Volkl retailers"); *Contractor Tool Supply, Inc. v. JPW Indus., Inc.*, No. 5:24-cv-347-JA-PRL, 2024 WL 4980597, at *1 (M.D. Fl. Dec. 4, 2024) (dismissing antitrust claim against tool manufacturer MAP policy instituted to "protect the reputation and value of its brands").  Plaintiff's admission that "MAPs already existed within the Archery Products industry in the early-2000s" (Compl. ¶ 79), 14 years *before* the alleged conspiracy, further belies any notion that "no reasonable firm" would adopt MAP policies absent an industry-wide agreement.  Because the use of MAP policies is, at least, equally consistent with lawful conduct as with the alleged conspiracy, this "plus factor" does not add anything to the equation.

### iv. *Participation in Trade Association Activities Does Not Support an Inference of Conspiracy*

The allegation that Defendants acted collectively via a trade association requires careful scrutiny, as "[n]ot every action by a trade association is concerted action by the association's members." *Llacua*, 930 F.3d at 1178 (quoting *N. Am. Soccer League, LLC. v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 40 (2d Cir. 2018). "Indeed, even though a trade association by its nature involves collective action by competitors, ***a trade association is not by its nature a walking conspiracy***." *Consol. Metal Prods., Inc. v. Am. Petrol. Inst.*, 846 F.2d 284, 293 (5th Cir. 1988) (emphasis added); *Llacua*, 930 F.3d at 1178 (same).

Public statements and industry publications from the ATA are not attributable to individual ATA members. *See supra* § IV.A. But even if they were, Plaintiff has failed to plead how these statements were inconsistent with rational business strategy and how they were evidence of conspiracy. Such statements regarding the market do not "tend to exclude the possibility of independent behavior." *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1306 (11th Cir. 2003) (holding company's announcement of plan not to increase prices was a "legitimate communication within the market"); *see also In re Delta/AirTran Baggage Fee Antitrust Litig.*, 245 F. Supp. 3d 1343, 1374 (N.D. Ga. 2017) (noting that taking all public statements as invitations to collude "would take unilateral action by a company . . . and deem it collusive merely because it was preceded in time by another unilateral action by a competitor"). Indeed, "[i]f no conspiracy existed," the ATA "would likely make the same public statements about their observations, predictions, and strategies for the future." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 50 (8th Cir. 2022).

Pleading participation by individual members in trade association activities, including trade shows and online discussion boards, is similarly an insufficient allegation by itself to indicate an illegal agreement. As noted by the Supreme Court and the Tenth Circuit, "associations are beneficial to industry and to consumers. . . . To avoid deterring the collaboration that yields these benefits, it is necessary to ensure circumstantial evidence . . . must tend to exclude the possibility the parties to the venture were acting independently." *Llacua*, 930 F.3d at 1180 (quoting *Twombly*, 550 U.S. at 554). Defendants' participation in the ATA, including events and discussions focused on the benefits of MAP, is equally consistent with rational business activity. The district court in *Musical Instruments* put it aptly when facing nearly identical allegations:

> Plaintiffs have alleged Defendants' representatives attended large trade show meetings or other large meetings attended by a wide variety of people, where MAPs were discussed or advocated as being good for the industry. But unilateral advocacy, particularly in an open and public forum, is not itself an agreement or conspiracy. And independent responses to public advocacy without an agreement, even if consciously parallel to other entities' activity, would simply be permissible parallel conduct. . . . Nor does attendance at trade shows or other large meetings imply an agreement or conspiracy. As the Court's earlier rulings reflect, this is normal business activity, and doesn't imply any kind of illegality.

*In re Nat'l Ass'n of Music Merchs., Musical Instruments & Equip. Antitrust Litig.*, No. 09CV2002, 2012 WL 3637291, at *2 (S.D. Cal. Aug. 20, 2012), *aff'd*, 798 F.3d 1186. The same is true here, and allegations of trade association activity involving the ATA making up the bulk of the Complaint fail to move the needle on plausibility of Plaintiff's alleged conspiracy.

### v.     Alleged Rising or Inflated Retail Prices Do Not Support an Inference of Conspiracy

Plaintiff's cursory allegations that retail prices of archery products have increased in the past 11 years, or are "inflated," is not a sufficient pleading to support an inference of conspiracy. (*See* Compl. ¶¶ 24 (claiming "everything in archery is overpriced today"), 142 ("Consumers regard

archery equipment prices as inflated.").)  These allegations are devoid of factual support and fail to plausibly plead an alleged conspiracy: "even if plaintiffs had alleged that retail prices of defendants' [products] rose in tandem as sales dropped, such a price increase is no more suggestive of collusion than it is of any other potential cause." *Musical Instruments*, 798 F.3d at 1197.  Plaintiff cannot rely on vague allegations of rising or high prices to infer a conspiracy.

With no properly pleaded "plus factors" to back up his implausible allegations of conspiracy, Plaintiff cannot state a claim under Section 1 of the Sherman Act.  The Complaint should be dismissed.

### C.    Plaintiff's Own Allegations Defeat His Claim of Fraudulent Concealment

Plaintiff's claim relies on a host of widely available, public statements, many of which are or were available on the internet, made well before the four-year statute of limitations applicable to all Sherman Act claims.  15 U.S.C. § 15b.  Plaintiff attempts to plead around this deficiency by alleging fraudulent concealment of the alleged unlawful conduct.  That, however, is belied by the few facts pleaded in the Complaint.  Fraudulent concealment requires a showing of "(1) the use of fraudulent means by the conspirators; (2) successful concealment from plaintiffs; and (3) that plaintiffs did not know or by the exercise of due diligence could not have known that they might have had a cause of action." *In re Urethane Antitrust Litig.*, 913 F. Supp. 2d 1145, 1158 (D. Kan. 2012) (citing *Ballen v. Prudential Bache Secs., Inc.*, 23 F.3d 335, 336-37 (10th Cir. 1994)).

Plaintiff pleads facts that plainly establish that he knew or reasonably should have known about the basis for his cause of action nearly a decade ago.  Plaintiff points almost entirely to *public* statements—announcements, social media, blog posts, and websites—by the ATA and a handful of others to substantiate his claim of a wide-ranging conspiracy.  (*See* Compl. ¶¶ 76-134.)  Plaintiff also alleges, wholly inconsistent with claims of a "secret and self-concealing" conspiracy (*id.* ¶ 152),

that over 2,500 coconspirators disseminated and adhered to MAP policies applicable to virtually every archery distributor and retailer across the entire United States for more than 11 years.  (*Id.* ¶¶ 1, 48, 61.)  Plaintiff also alleges that, no later than 2017—eight years ago and well outside the statute of limitations—the "insane" prices caused by Defendants' alleged conduct were widely covered in multiple "published reports" and well known to "consumers" of archery products. (*Id.* ¶ 142.)  As such, to claim that "Defendants' conduct was secret and self-concealing" and "coordinated behind the ATA's closed doors" is on its face and as a matter of law not credible.[5]  (*Id.* ¶¶ 152-53.)  Plaintiff compounds his error by pleading "potentially problematic references to [the ATA's] role in coordinating" the conspiracy available for the whole world to see on the ATA website.  (*Id.* ¶ 154.) Plaintiff alleges nothing that came to light in the last four years that suddenly made the nature of the "conspiracy" clear.[6]

No conspiracy has been properly pleaded, and the conspiracy that is alleged is one that played out in the public eye beginning well over a decade ago, well beyond the statute of limitations. Plaintiff has no excuse for his lack of diligence in bringing a claim.

## V.  **CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed in its entirety.

---

[5] Plaintiff's additional claim that Defendants' conduct was "secret and self-concealing" because they "simply called [their policies] 'MAPs'" does not pass muster.  (*See* Compl. ¶ 152.)  To state the obvious, it is not fraud to call a MAP a MAP—even Plaintiff does the same.  Further, "[t]he Tenth Circuit has never applied the self-concealing standard" and instead requires affirmative acts of a fraudulent nature to toll the statute of limitations.  *Urethane*, 913 F. Supp. 2d at 1160.

[6] Allegations of acts since 2021 are an afterthought, comprised of an unremarkable statement by two individuals about "help[ing] the industry succeed," discounts offered to ATA members, and one manufacturer's statement in a magazine that "[w]e police MAP 24/7" (fully consistent with a unilateral MAP policy).  (Compl. ¶¶ 133-34.)

Dated: July 10, 2025                    /s/ Brent O. Hatch
                                        HATCH LAW GROUP, PC
                                        Brent O. Hatch
                                        Adam M. Pace

                                        BAKER BOTTS L.L.P.
                                        Erik T. Koons (*pro hac vice pending*)
                                        Thomas E. Carter (*pro hac vice pending*)
                                        Frances Jennings (*pro hac vice pending*)

                                        *Attorneys for Defendant*
                                        *Mathews Archery, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of July, 2025, I caused a true and correct copy of the foregoing **DEFENDANT MATHEWS ARCHERY, INC.'S MOTION TO DISMISS** to be served via the CM/ECF filing system on the following counsel:

Jason L. Lichtman (SBN 18770)
Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street
New York, NY 10013
(212) 355-9500
jlichtman@lchb.com

David W. Kesselman (*pro hac vice*)
Abiel Garcia (*pro hac vice*)
Amy T. Brantly (*pro hac vice*)
Kesselman, Brantly, Stockinger LLP
1230 Rosecrans Avenue, Suite 400
Manhattan Beach, CA 90266
(310) 307-4555
dkesselman@kbslaw.com
agarcia@kbslaw.com
abrantly@kbslaw.com

Gary I. Smith, Jr. (*pro hac vice*)
Hausfeld LLP
580 California Street, 12th Floor
San Francisco, CA 94101
(415) 633-1908
gsmith@hausfeld.com

Joshua H. Grabar (*pro hac vice* forthcoming)
Julia C. Varano (*pro hac vice* forthcoming)
Graber Law Office
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
(267) 507-6085
jgrabar@grabarlaw.com
jvarano@grabarlaw.com

Will Hanna (*pro hac vice*)
Hausfeld LLP
888 16th Street, N.W., Suite 600
Washington, DC 20006
(202) 540-7200
whanna@hausfeld.com

*Attorneys for Plaintiff Joseph Santarlas*

/s/ Brent O. Hatch